# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **RUBY G. HOWARD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: 3:10-CV-527-VEH** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER,** ) | |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**[1]

Plaintiff Ruby G. Howard ("Ms. Howard") brings this action pursuant to 42

---

[1] The undersigned has rendered several other comparable decisions which address the inadequacies of the respective ALJ's residual functional capacity ("RFC") determinations from which the framework, analysis, and disposition of this case persuasively flow. *See, e.g., Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (reversing and remanding under similar circumstances in which the court found that the ALJ's RFC finding was not supported by substantial evidence); *Glover v. Astrue*, No. 3:09-CV-0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same); *Johnson v. Astrue*, No. 3:08-CV-1761-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 12, 2010) (same); *Martin v. Astrue*, No. 5:09-CV-1029-VEH, (Docs. 11, 12) (N.D. Ala. Mar. 25, 2010) (same); *Shelton v. Astrue*, No. 5:09-CV-1253-VEH, (Docs. 8, 9) (N.D. Ala. Apr. 26, 2010) (same); *Smith v. Astrue*, No. 4:09-CV-1591-VEH (Docs. 20, 21) (N.D. Ala. Oct. 25, 2010) (same); *Smith v. Astrue*, No. 4:09-CV-2191-VEH (Docs. 12, 13) (N.D. Ala. Oct. 28, 2010); *Mosley v. Astrue*, 4:10-CV-0189-VEH (Docs. 13, 14) (N.D. Ala. Nov. 15, 2010); *Lavelle v. Astrue*, No. 5:09-CV-2571-VEH (Docs. 12, 13) (N.D. Ala. Nov. 15, 2010).

U.S.C. § 416(i), § 216(i) of the Social Security Act (the "Act").  She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB").  Ms. Howard timely pursued and exhausted her administrative remedies available before the Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Howard was a 44-year-old female at the time of her hearing before the administrative law judge (the "ALJ") held on January 23, 2009. (Tr. 22-23, 18). Ms. Howard attended school through the seventh grade and testified that she "never did learn how to read good." (Tr. 23).

Ms. Howard's prior relevant work experience is limited to "that of a poultry worker." (Tr. 39).  This is considered to be an unskilled job at a light exertional level. (*Id.*).

Ms. Howard protectively applied for DIB on January 30, 2007. (Tr. 47, 52). In her disability application, Ms. Howard maintains that she became disabled on November 1, 2003, due to carpal tunnel syndrome, chronic knee pain syndrome, arthritis, and depression. (Tr. 52, 47-48).  The claim was denied initially on June 11, 2007. (Tr. 47-48, 52).

Ms. Howard timely filed a request for a hearing that was received by the Social Security Administration on June 29, 2007. (Tr. 52, 70). The hearing before the ALJ was held on held on January 23, 2009. (Tr. 18, 52). At the hearing, Ms. Howard amended her alleged disability onset date to November 22, 2006. (Tr. 20, 52).

On February 17, 2009, the ALJ concluded Ms. Howard was not disabled as defined by the Act and denied her DIB application. (Tr. 52-64). Ms. Howard then filed a request for review of the ALJ's decision on February 26, 2009. (Tr. 9). On January 6, 2010, the Appeals Council denied review, which resulted in the final decision of the Commissioner being the ALJ's disability determination that was adverse to Ms. Howard. (Tr. 1).

On March 12, 2010, Ms. Howard filed her complaint with this court asking for review of the ALJ's decision. (Doc. 1). On September 13, 2010, Ms. Howard filed a brief (Doc. 12) in support of her appeal, and on October 12, 2010, the Commissioner followed with his responsive brief. (Doc. 14). This court has carefully considered the record, and for the reasons stated below, reverses the Commissioner's denial of benefits, and remands the case for further development and consideration.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal

standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement

---

[2] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through October 28, 2010.

disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further

show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found Ms. Howard had not engaged in substantial gainful activity since the amended alleged onset date of her disability, *i.e.*, November 22, 2006. (Tr. 54 ¶ 2). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following severe impairments: status post bilateral carpal tunnel release surgeries (right May 2007, left December 2007), degenerative joint disease of the left shoulder, chondromalacia patella left knee,[3] degenerative disc disease of the lumbar spine, and major depressive disorder with history of psychotic features." (Tr. 54 ¶ 3 (citations omitted)). Accordingly, the ALJ concluded that Ms. Howard satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Howard did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments

---

[3] "Chondromalacia patellae" is defined as "pain over the front of the knee with softening of the articular cartilage of the patella[.]" *See* http://www.merriam-webster.com/medical/chondromalacia+patellae?show=0&t=1 292269460 (accessed on Dec. 13, 2010).

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 55 ¶ 4).  Ms. Howard does not challenge this determination on appeal.

The ALJ then evaluated Ms. Howard's RFC at step four, and the claimant was found to have:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to occasional lifting and carrying of up to 20 pounds, frequent lifting and carrying of up to 10 pounds, and her ability to use her hands to reach, handle and grasp is limited to a frequent basis.  In addition, due to her psychiatric impairments, she should be limited to occasional interaction with supervisors, coworkers, and the general public.

(Tr. 56 ¶ 5).[4]  Further, the ALJ accepted the testimony of the vocational expert that at this RFC-reduced light level, the claimant was unable to perform her past relevant employment as a poultry worker.  (Tr. 63; Tr. 63 ¶ 6).

---

[4]  The Regulations define light work as:

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (current through October 28, 2010).

Because of the ALJ's finding that Ms. Howard was unable to perform past relevant work, it was necessary to continue to step five of the sequential analysis. (Tr. 63-64). Using the Medical-Vocational Guidelines as a framework and relying upon testimony from the vocational expert, the ALJ determined that Ms. Howard was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 64). Examples of such possible light and unskilled jobs included employment as a packing line worker, an assembler of small parts, and a labeler. (*Id.*). Accordingly, the ALJ concluded Ms. Howard was not disabled as defined by the Social Security Act, and denied her DIB claim. (*Id.*).

## **ANALYSIS**

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In

particular, this court has a "<u>responsibility to scrutinize the record in its entirety</u> to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5]

In this appeal, Ms. Howard raises several different issues. (*See generally* Doc. 12). One of Ms. Howard's challenges relates to the ALJ's RFC determination. (Doc. 12 at 2-7; *id.* at 7 ("Similarly, in this case, instead of obtaining additional medical evidence to establish a medical basis for his RFC determination, the ALJ decided the claimant's RFC on his review of the bare medical finding[s] contained in the record.")). The court turns to the lack of any underlying medical opinion by a physician in support of the ALJ's RFC determination that Ms. Howard is capable of performing light work with additional restrictions given her collection of severe physical and mental impairments and agrees with Ms. Howard that, under the circumstances of her case, the ALJ committed reversible error.[6]

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[6] As a result, the court does not reach the merits of the other issues presented on appeal, including those contained in the separately filed Motion to Remand with Submission.

**I.     IN THE ABSENCE OF A SUPPORTING MEDICAL SOURCE STATEMENT OR A PHYSICAL CAPACITIES EVALUATION BY A PHYSICIAN THAT CONSIDERS THE IMPACT OF MS. HOWARD'S COLLECTION OF SEVERE IMPAIRMENTS, THE ALJ'S PHYSICAL RFC DETERMINATION THAT SHE CAN PERFORM A REDUCED RANGE OF LIGHT WORK IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

In support of the his RFC determination, the ALJ observed that "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (Tr. 61). In fact, the only functional assessment performed by a doctor that the court was able to locate in the record relates solely to Ms. Howard's mental abilities. (Tr. 229-232). Because this evaluation by Robert Estock, M.D. ("Dr. Estock") is limited in scope to Ms. Howard's mental functioning, it does not lend any support to the ALJ's decision with respect to Ms. Howard's physical RFC.

Furthermore, Defendant has not pointed to (*see generally* Doc. 14) a medical source opinion[7] or a physical capacities evaluation conducted by a physician that substantiates Ms. Howard is capable of performing a reduced range of light work given her severe physical impairments of status post bilateral carpal tunnel release

---

[7] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'" SSR 96-5p.

surgeries, degenerative joint disease of the left shoulder, chondromalacia patella left knee, and degenerative disc disease of the lumbar spine.  Such an omission from the record is significant to the substantial evidence inquiry pertaining to the ALJ's RFC determination.  *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record.").

The court acknowledges that the ALJ did refer within his opinion to several different records from various medical providers pertaining to Ms. Howard.  However, for the most part such documentation is reported merely as raw physical findings applicable to Ms. Howard.  (*See, e.g.*, Tr. 59-60 (discussing records from orthopedist Dr. John A. Young)).  Moreover, with the exception of Dr. Estock's mental functional assessment of the claimant, these records do not offer opinions about the impact of  Ms. Howard's impairments in vocational terms or attach a physical  capacities evaluation of her.  *See, e.g., Rohrberg*, 26 F. Supp. 2d at 311 ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'") (citation omitted).

As another district judge of this court aptly explained the RFC issue in the

context of an ALJ who comparably determined, without the benefit of a physical capacities evaluation conducted by a physician, that the claimant was not disabled:

> While the Record contains Ms. Rogers' [s] medical treatment history, it lacks any physical capacities evaluation by a physician. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996). In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required. *Id.* In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations. Further, Ms. Rogers' [s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers' [s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record.") (emphasis added) (citations omitted); *Rohrberg*, 26 F. Supp. 2d at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added)

(citation omitted); *cf. Giddings v. Richardson*, 480 F.2d 652 (6th Cir. 1973) ("To meet such a prima facie case it is not sufficient for the government to rely upon inconclusive medical discussion of a claimant's problems without relating them to the claimant's residual capacities in the field of employment.") (emphasis added).

Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person such as an ALJ is not able to discern Ms. Howard's work-related exertional abilities and appropriate non-exertional restrictions based upon the unfiltered information contained in her medical records. Moreover, the lack of a medically-determined physical RFC that supports the ALJ's RFC determination is particularly critical here when, undisputably, Ms. Howard is not able to perform relevant past work given the additional job-related restrictions that the ALJ placed on her at the light exertional level. As the undersigned has previously recognized in another fifth-step burden decision that similarly resulted in a remand for further development of the claimant's functional abilities:

> The Eleventh Circuit has held that the absence of a physician's opinion regarding a plaintiff's functional limitations does not morph into an opinion that the plaintiff can work. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). "Such silence is equally susceptible to either inference, therefore, no inference should be taken." *Id.*

*Clemmons v. Barnhart*, No. 3:06-CV-1058-VEH, (Doc. 22 at 11) (N.D. Ala. June 11, 2007).

Therefore, in the absence of a medical source statement and/or any physical capacities evaluation conducted on Ms. Howard by a physician that corroborates the ALJ's determination that she has the ability to perform light work with certain non-exertional restrictions despite her severe physical impairments of status post bilateral carpal tunnel release surgeries, degenerative joint disease of the left shoulder, chondromalacia patella left knee, and degenerative disc disease of the lumbar spine, the record has not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.") (citations omitted).

Likewise, the ALJ's determination that Ms. Howard can perform light work with certain non-exertional restrictions is not supported by substantial evidence. Accordingly, the decision of the Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.

**II.    The ALJ's Mental RFC Determination Is Also Deficiently Supported.**

Regarding Ms. Howard's mental work-related limitations, the ALJ concluded:

In addition, due to her psychiatric impairments, <u>she should be limited to</u>

<u>occasional interaction with supervisors, coworkers, and the general public</u>.

(Tr. 56 ¶ 5 (emphasis added)). In formulating restrictions relating to Ms. Howard's mental RFC, the ALJ stated that he gave the opinion of Dr. Estock "great weight." (Tr. 62 (citing Exhibit 7F)).

Dr. Estock's opinion regarding Ms. Howard's vocational abilities in light of her mental condition expressly indicates:

> Claimant is able to remember locations and work like procedures. She is able to understand, remember and carry out short simple instructions. <u>She may have moderate difficulty handling more detailed instructions but likely can handle even these if they are broken down into simple 1-2 step tasks and she is given adequate rehearsal</u>.
>
> Claimant is able to maintain attention sufficiently to complete <u>simple 1-2 step tasks for periods of up to 2 hours without special supervision or extra rest periods</u>.

(Tr. 231(emphasis added)).

Therefore, the mentally-related restrictions that the ALJ ultimately placed on Ms. Howard do not match those that Dr. Estock suggested. (*Compare* Tr. 56 ¶ 5 *with* Tr. 231). Moreover, the ALJ did not explain why he deviated from Dr. Estock's list of limitations after he assigned great weight to Dr. Estock's opinion. Further, the ALJ's decision did not point to any alternative underlying physician-developed opinion (and the court also has not been able to locate such proof based upon its own

review) which corroborates his conclusions about the degree to which Ms. Howard should be mentally restricted in her work due to her severe impairments of major depressive disorder with a history of psychotic features.

Instead, akin to the physical RFC, it appears that the ALJ derived the mental limitations for Ms. Howard based upon his review and interpretation of raw medical information that he found in the record. (*See, e.g.*, Tr. 61 ("As for the claimant's mental impairments, <u>the records support the residual functional capacity conclusions reached in this decision</u>.") (emphasis added); *see also* Tr. 62 ("Based on the opinion of Dr. Estock, which is supported by the mental health center records and the record as a whole, the undersigned finds that the claimant's mental conditions have resulted in only a mild restriction of daily living activities, moderate difficulty with maintaining social functioning, and mild difficulty with maintaining concentration, persistence and pace.")).

Alternatively, it appears that the ALJ arbitrarily arrived at Ms. Howard's mental RFC and additional limitations without the benefit of any corroborating functional proof provided by a physician. Accordingly, the mental component of the ALJ's RFC determination is also not supported by substantial evidence, and a remand to the Commissioner is appropriate due to this additional reason.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 16th day of December, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge